FREUNDLICH & LITTMAN, LLC
Austin R. Freundlich I.D. #205670
Gregory C. Littman, I.D. # 306806
Megan D. Hazel, I.D. #84047

1425 Walnut Street, Suite 200
Philadelphia, PA 19102
(215) 545-8500                                                                                          *Attorneys for Plaintiff*

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JORDAN E. NIKOLOFF, <br> Executrix of the Estate of JOHN A. NIKOLOFF, Decedent <br> 10101 JAYDEE BOULEVARD <br> FAIRFAX STATION, VA 22039 <br> Plaintiff | : <br><br><br> : | |
| v. <br><br> PENNSYLVANIA ENERGY RESOURCES GROUP, LLC. <br> 293 BRADLEY CIRCLE <br> NEW CUMBERLAND, PA 17070 <br><br> and <br><br> NICHOLAS J. WACHINSKI <br> 333 LUDWELL DRIVE <br> LANCASTER, PA 17601 <br> Individually, and as Member of <br> Pennsylvania Energy Resources Group, LLC <br> and <br><br> NICOLE E WILBOURN <br> 129 TARHEEL DRIVE <br> MIDDLETOWN, PA 17057 <br> Individually, and as Member of <br> Pennsylvania Energy Resources Group, LLC <br><br> and | : <br><br> : <br><br><br> : <br><br><br> : <br><br><br><br><br> : <br><br><br><br><br> : | DOCKET NO. |

| | |
|---|---|
| BRENDAN R. SCHUBERT | : |
| 1625 HYBLA STREET | |
| PITTSBURGH, PA 15212 | |
| Individually, and as Member of | |
| Pennsylvania Energy Resources Group, LLC | : |
| Defendants. | |

## CIVIL ACTION – COMPLAINT

AND NOW COMES Plaintiff, Jordan E. Nikoloff, Executrix of the Estate of John A. Nikoloff, (hereinafter "Plaintiff") by and through undersigned counsel, Freundlich & Littman, LLC, and files this Complaint in Equity against above named Defendants and avers as follows:

INTRODUCTION

This action seeks a judicial order requiring Defendants to comply with the terms of the Operating Agreement which governs Defendant Limited Liability Company Energy Resource Group Partners, LLC, and the Pennsylvania Limited Liability Company Act, and specifically to enforce Plaintiff's right to access books and records of the LLC, to provide a full and formal accounting of the LLC's financial affairs, and for immediate valuation and buyout of Decedent's majority interest in the LLC.

Plaintiff over several months has consistently attempted to enforce her rights as Executrix of the Estate, as her father held the majority interest in the LLC until the time of his death, which majority interest was transferred to his daughter through his Estate. With equal consistency, the LLC through its remaining members Nicholas J. Wachinski, Nicole E. Wilbourn and Brendan R. Schubert have refused to grant access to, provide an accounting for, or otherwise cooperate in the valuation and buyout of Decedent's shares in the LLC, despite letter of intent to do so sent by the LLC to Executrix on April 3, 2025.

Because the terms of the OA have been violated, the intent of majority deceased shareholder has been frustrated, and Executrix on behalf of her father's Estate has been repeatedly stonewalled, Executrix now files the instant action in equity to have her rights enforced, as granted to her through her father's estate and pursuant to the stated terms of the OA, the documented intent of the LLC members, and the provisions of the PA LLC Act of 2016.

## PARTIES

1. Plaintiff Jordan E. Nikoloff (hereafter "Plaintiff"), Executrix of the Estate of John A. Nikoloff, and is an adult individual residing at 10101 Jaydee Blvd, Fairfax Station, Fairfax County, VA 22039.

2. Defendant Pennsylvania Energy Resources Group, LLC, (hereafter "ERG") is a Limited Liability Company organized and existing under the laws of the Commonwealth of Pennsylvania, with a registered office and principal place of business at 293 Bradley Circle, New Cumberland, Cumberland County, PA 17070, and a mailing address of P.O. Box 547, Harrisburg, PA 17108-0547.

3. Defendant Nicholas J. Wachinski (hereafter "Wachinski") is an adult individual and member of ERG, residing at 333 Ludwell Drive, Lancaster, Lancaster County, PA 17601.

4. Defendant Nicole E. Wilbourn (hereafter "Wilbourn") is an adult individual and member of ERG, residing at 129 Tarheel Drive, Middletown, Dauphin County, PA 17057.

5. Defendant Brendan R. Schubert (hereafter "Schubert") is an adult individual and member of ERG, residing at 1625 Hybla Street, Pittsburgh, Allegheny County, PA 15212.

6. The above Defendants, collectively, are the remaining members of ERG since the death of now-dissociated former member John A. Nikoloff, who until the dissociation event of his death on January 10, 2025 was the majority shareholder of ERG.

**JURISDICTION AND VENUE**

7. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship between Plaintiff and Defendant, and the amount in controversy exceeds the sum of $75,000.00, exclusive of interest and costs.

8. This Court has supplemental jurisdiction over Plaintiff's state law claims, pursuant to 28 U.S.C. §1367.

9. Venue is proper in the United States District Court for the Middle District of Pennsylvania pursuant to 28 U.S.C. § 1391(b), as the events giving rise to the claims herein occurred in this District, all Defendants transact business in this District.

10. The Operating Agreement of Defendant ERG, which Agreement is pertinent to the subject matter of this litigation, specifically in Section 12.2, Jurisdiction and Venue for Lawsuits, requires the application of Pennsylvania law and the jurisdiction of any federal or state court sitting in Dauphin County, Pennsylvania.

**FACTS**

11. In accordance with the recitals in its Operating Agreement, ERG is a Limited Liability Company operating as a public affairs/lobbying group to provide clients with project development services, strategic and business analysis, consulting and lobbying services to support development of energy projects. A true and correct copy of the OA is attached hereto and made part hereof as Exhibit "A".

12. The Operating Agreement, dated March 15, 2024, was appended on April 15, 2024 to include ownership percentages of all members, which Operating Agreement was also fully executed by all members. See Ex. "A".

13. The Decedent, at all times relevant hereto prior to his death on January 10, 2025, was founder of ERG which was formed in 2007, and was the majority shareholder, with at least a 50% interest in the company at all times relevant hereto.

14. As set forth in Ex. "A" hereto, Article 9 of the subject OA governs changes in membership, and Section 9.4 of Article 9 states in pertinent part as follows:

> 9.4.    Dissociation of a Member.
>
> 9.4.1   A Person shall cease to be a Member upon the happening of any of the following events:
>
> … (iii) in the case of a Member who is an individual or natural person, death or disability …
>
> Upon any such event the Member shall be known as a "Dissociated Member" and such event shall be referred to as a "Dissociation".
>
> 9.4.2   Upon any Dissociation, the Company shall continue, and no vote of Members need be taken in order for the Company to so continue and such event shall not cause dissolution of the Company to occur. Upon the Dissociation of a Member, the remaining Member(s) shall, subject to the provisions of the Act:
>
> **9.4.3   Dissociation upon Death or Disability.** Notwithstanding the foregoing provision of Section 9, the Members covenant and agree that on the death or permanent disability of any Member**, the Company, at its option, by providing written notice to the Dissociated Member or the Estate of the deceased Member within 90 days of the Dissociation event, may purchase, acquire, and redeem the Interest in the Company of the Dissociated Member** pursuant to the provision of Section 9.4.2.
>
> 9.4.4.  The value of each Member's Interest in the Company will be determined on the date this Agreement is signed, and the value will be made a part of this Agreement. **The value of each Member's Interest will be determined by the Members annually, unless the Members unanimously decide to determine those values more frequently. The purchase price for a Dissociated Member's interest conclusively is the value last determined before the dissociation of such Mem er. If no new value has been annually determined, the last determined value will apply**.
>
> 9.4.5.  At closing, the Company will pay the purchase price for the deceased Member's Interest in the Company. If the purchase price is less than $10,000.00, the purchase price will be paid in cash; if the purchase price is $10,000.00 or more, the purchase price will be paid as follows:

      (1) $10,000.00 in cash, bank cashier's check, or certified funds

      (2) The balance of the purchase price by the Company executing and delivering its promissory note for the balance to be paid over three years, with interest at four (4) percent. Principal and interest will be payable in 36 equal monthly installments. The promissory note will be unsecured and will contain provisions that the principal sum may be paid in whole or in part at any time, without penalty.

    9.4.6   At the closing, the Dissociated Member's estate or personal representative must assign to the Company all of the Dissociated Member's Interest in the Company free and clear of all liens, claims, and encumbrances, and, at the request of the Company, the estate or personal representative must execute all other instruments as may reasonably be necessary to vest in the Company all of the Dissociated Member's right, title, and interest in the Company and its assets. If either the Company or the Dissociated Member's estate or personal representative fails or refuses to execute any instrument required by this Agreement, the other party is hereby granted the irrevocable power of attorney which, it is agreed, is coupled with an interest, to execute and deliver on behalf of the failing or refusing party all instruments required to be execute and delivered by the failing or refusing party.

    9.4.7   On completion of the purchase of the deceased Member's Interest in the Company, the Ownership Interests of the remaining Members will increase proportionately to their then-existing Ownership Interests ***(emphasis added)***.

15. A number of days after her father's death, Wachinski contacted Plaintiff requesting to discuss "next steps" with her via text message. Attached hereto and made part hereof as Exhibit "B" is a true and correct copy of this message.

16. A number of weeks passed, and Plaintiff reached out to all of the individual members collectively on February 26, 2025 asking about updates to the previously discussed buyout of her father's interest, and upon receiving no response from any of them, again texted Wilbourn on March 1, 2025 inquiring of her directly. Attached hereto and made part hereof as Exhibit "C" are true and correct copies of the text messages.

17. On March 5,2025, Plaintiff made inquiry of ERG's Certified Public Accountant for the company's financial statements.

18. Suspiciously, on March 6, 2025, a day after reaching out to ERG's CPA, a day after reaching out to ERG's CPA, Plaintiff received a text message from Wachinski, asking if she had time to talk.

19. Plaintiff and Wachinski connected by telephone on March 7, 2025, during which conversation he asked for clarification as to what documents she wanted, ultimately telling her he would get the documents they discussed by the end of that day, and that they would "discuss the buyout details soon".

20. Plaintiff never received the documents.

21. On or about March 10,2025, Plaintiff reached out to the CPA for ERG again in an effort to obtain the financial documents necessary for probate of her father's Estate.

22. Rather than receiving the documents to which she is entitled, Plaintiff instead received an email from the CPA, asking her to "prove" that she was her father's Executrix.

23. All involved with ERG and Plaintiff had knowledge that Ms. Nikoloff was the Executrix of her father's Estate, however, she provided the necessary letters testamentary (i.e. Short Certificate) to both the CPA and Wachinski.

24. For approximately a month thereafter, despite texts and follow-up emails, no responses were received by Plaintiff to any requests, nor were financial records or copies of any documents received from ERG, other than a K-1 for Decedent's tax return which was mailed by the CPA.

25. On or about March 19, 2025, Wachinski texted Plaintiff's husband, who provided pro bono IT consulting and services for his father in law's company, asking him for a 'recovery code' for one of her father's password-protected accounts.

26. The account Wachinski was trying to access was her father's life insurance account.

27. Shocked at learning this, Plaintiff reached out to Wilbourn and asked if she knew that Wachinski had tried to access the late Nikoloff's personal life insurance account.

28. Apparently, Wilbourn relayed this inquiry to the other members, as Plaintiff received numerous missed calls directly thereafter from both Wachinski and Schubert.

29. On or about March 21, 2024, Wachinski then sent a group text to Defendants, Plaintiff, and Plaintiff's husband, stating that they should "discuss issues" and "finalize the buyout".

30. In that same text, Wachinski brazenly advises Plaintiff to stop accessing her father's email accounts. Attached hereto and made part hereof as Exhibit "D" is a true and correct copy of the text from Wachinski.

31. On March 24, 2025, Plaintiff received a direct email from her father's "Dropbox" account, the storage service that held his company books and records, with notification that the storage service had been canceled on that date. Attached hereto and made part hereof as Exhibit "E" is a true and correct copy of the notification from Dropbox.

32. The following day, on March 25, 2025, Plaintiff emailed all Defendants and repeated her request for a meeting to discuss the buyout of her father's membership interest and asked that the Defendants stop attempting to access her father's life insurance accounts.

33. Wachinski responded to the group text, proposing a time for the meeting; however, he emailed Plaintiff in separate correspondence and without inclusion of the other members, stating that he only asked her to stop accessing her father's account because ERG was "potentially considering" a vendor change, which would render her unable to access accounts. Attached hereto and made part hereof as Exhibit "F" is a true and correct copy of the Wachinski's separate email to Plaintiff.

34. As stated in paragraph 31 hereinabove, Plaintiff had already been denied access by March 24, 2025, as the vendor change had already occurred by the time Wachinski told Plaintiff they were "considering" the vendor change.

35. Also in that email, Wachinski stated that his attempts to access Plaintiff's father's personal accounts were "in preparation for discussions with her", although Wachinski and the other Defendant ERG members had been stonewalling Plaintiff for months, and this explanation was provided after his deceptive attempt at access and without request or knowledge of Plaintiff prior to the attempt. See Ex. "F".

36. As the actions of Defendants as set forth hereinabove became more and more troubling to Plaintiff, she reflected on interactions between herself and Defendants over the months since her father's death.

37. In so doing, Plaintiff recalled discussions with Wachinski regarding a meeting on January 9, 2025, less than 48 hours before Decedent's death, where Defendants unanimously voted to increase their own salaries, which unanimous vote occurred while Decedent, founder and majority company member with 50% interest, was in the hospital.

38. During this same general timeframe, Plaintiff received a direct deposit for $2500, and upon inquiry of Wachinski, Plaintiff was informed that the direct deposit was "her father's last paycheck". Attached hereto and made part hereof as Exhibit "G" is a true and correct copy of the email referenced hereinabove.

39. According to bank statements and other records held by the Estate, Decedent John Nikoloff's net pay each period was $6399.19. Attached hereto and made part hereof as Exhibit "H" is a true and correct copy of these pay records.

40. Despite inquiry, Plaintiff did not receive, and never has received, any explanation for the significant reduction in her father's last paycheck.

41. Transparent communication was and is vital to Plaintiff in her role as Executrix of the Estate, in order to handle the affairs of Decedent through probate with regard to - inter alia - payroll, financials for his company, bills, invoices, tax returns, agreements, insurance policies and other business and personal matters.

42. Months had passed since Wachinski's initial text in January 2025, with Defendants repeatedly promising information to Plaintiff she has not obtained to date, and either sending deceptive correspondence or ignoring her requests altogether.

43. On April 3, 2025, a letter of intent was sent by counsel for ERG, addressed to the Estate of John A. Nikoloff, Attn: Jordan Nikoloff, Executrix, which letter regarded "Redemption of Ownership Interest in Pennsylvania Energy Resources Group, LLC". A true and correct copy of the letter of intent is attached hereto and made part hereof as Exhibit "I".

44. The letter contained a recitation of some of the OA regarding Dissociation of a Member, and states: 'The valuation of Mr. Nikoloff's ownership interest in the Company was agreed upon at the time the Operating Agreement was signed." See Ex. "I."

45. As plainly evident on the face of the document itself, the above-referenced statement as written by ERG counsel is not a complete and accurate representation of the Operating Agreement's language with respect to valuation.

46. Plaintiff sought counsel of her own, who then began to contact counsel for ERG regarding the buyout.

47. In follow up to the April 3, 2025 letter, counsel for Plaintiff sent an email to ERG counsel on April 23, 2025, asking for the most recent valuation.

48. Six days later, on April 29, 2025, ERG counsel responded that there was "no formal valuation performed" and the company was "in the process of compiling all necessary financials and other information needed for the calculations". Attached hereto and made part hereof as Exhibit "J" is a true and correct copy of the email from ERG counsel.

49. On or about June 4, 2025, Plaintiff contacted her counsel at the time having heard nothing about the progress of the valuation and/or buyout, wherein counsel informed Plaintiff she would be reaching out again to ERG counsel.

50. On or about June 17, 2025, Plaintiff again reached out to her attorney at the time, and was advised on June 19, 2025 that ERG counsel was "checking with his client and getting back to her".

51. Approximately another month passed, and on July 7, 2025 Plaintiff retained current counsel to represent her interests and the interests of the Estate with regard to this matter.

52. Over the next couple of weeks, counsel reviewed and discussed the documents provided by Plaintiff, and on August 8, 2025, undersigned counsel sent to ERG counsel a Demand for Books, Records and Meeting Minutes of Pennsylvania Energy Resources Group, LLC. A true and correct copy of the Demand letter is attached hereto and made part hereof as Exhibit "K".

53. Attempts by current counsel for Plaintiff have consistently been met with the same response by counsel for ERG -- "that his client will look into it".

54. To date, three months later, undersigned counsel has received no documents from ERG counsel, nor even a phone call or email to explain the delay and refusal to provide documents., nor even a phone call, from ERG Counsel.

55. Plaintiff, in executing the Estate of her late father, was privy to correspondence from and to her father, as President of ERG, regarding the company's most recent valuation, an Accounts Receivable statement, and corporate meeting minutes with all members present that documented discussions regarding current valuation. Attached hereto and made part hereof as Exhibit "L", collectively, are true and correct copies of the aforementioned notes/correspondence, A/R statement and meeting minutes.

56. Plaintiff believes, and therefore avers, that the valuation of the company is significantly higher than that which the Defendants, remaining Members, intend to pay her as a buyout for her founding father's interest.

57. Plaintiff believes, and therefore avers, that Defendants' refutation of her efforts to progress the buyout, deceptive communication or ignorance of her attempts to communicate, refusal to provide requested records, books and minutes, lack of explanation regarding salary and/or payroll, and refusal to provide an accounting or financial records are all in furtherance of their interest to undervalue the company when offering a buyout to Plaintiff.

58. As Executrix, Plaintiff is entitled to enforce the economic rights of her father's Estate.

59. Upon the Decedent's death, the Estate, through Plaintiff Executrix, succeeded to the Decedent's economic and financial interest in the LLC.

60. The Remaining Members are in control of the LLC's assets, operations, and financial records, and refuse to comply with Plaintiff's requests.

61. The acts of Defendants completely disregard the contractual rights of the Estate, and the fiduciary duties owed to the Decedent's successor in interest.

62. Defendants' actions are also contrary to the terms of the ERG Operating Agreement. See Ex. "A".

63. Defendants' actions toward a Dissociated Member as set forth hereinabove were done intentionally and in bad faith, and in breach of the remaining Member Defendants' fiduciary duty to Plaintiff, as personal representative of the Dissociated Member.

64. Plaintiff, in accordance with her father's Will is the heir of his Estate and has a right pursuant to that Will, and economic interest in the Estate bequeathed to her. Attached hereto as Exhibit "M" is a true and correct copy of the Will.

65. The rights bestowed on Plaintiff as an heir to her father's Estate are being wrongfully withheld by Defendants.

66. As more time passes, Plaintiff becomes more severely damaged financially, with lost opportunities for the funds the buyout would have provided her had it occurred many months ago as it should have.

67. Plaintiff has suffered, and will continue to suffer, immediate and irreparable harm due as a direct and proximate cause the Defendants' actions, including the potential dissipation or devaluation of the Estate's majority interest.

**COUNT I**
**BREACH OF CONTRACT**
**(OPERATING AGREEMENT)**

68. Plaintiff incorporates by reference the preceding paragraphs as if fully set forth herein at length.

69. The Operating Agreement is a valid and enforceable contract between the Members and the LLC.

70. The Decedent and the Estate performed all conditions precedent required of them.

71. The Defendants have breached the terms of the Operating Agreement and, specifically, Article 9 Section 9.4 with regard to the Dissociation of a Member.

72. As Plaintiff is the personal representative of the Estate of the Dissociated Member, she steps into the shoes of that Dissociated Member and his Estate's rights under the contract.

73. Defendants have specifically breached Article 9, Section 9.4.3 of the Operating Agreement in their failure to commence and complete the buyout of Plaintiff's interest with the timeframe set forth in the Operating Agreement (see, Ex. "A").

74. As a direct and proximate result of the Defendants' breach, Plaintiff as Executrix of the Estate has suffered damages in the form of delayed payment, loss of use of funds, and legal fees.

WHEREFORE, Plaintiff respectfully requests this Honorable Court enter judgment in favor of Plaintiff and against Defendants, for breach of contract and Plaintiff all compensatory damages, including the full fair market value of the Decedent's interest, lost profits and any other such relief as this Court deems just and equitable.

## COUNT II
## BREACH OF FIDUCIARY DUTY
## AND OPPRESSION

75. Plaintiff incorporates by reference the preceding paragraphs as if fully set forth herein at length.

76. As Members and/or managers of the LLC, the Remaining Members owe the Estate of Decedent fiduciary duties of loyalty, care, and good faith pursuant to the Pennsylvania Limited Liability Company Act of 2016.

77. Pursuant to 15 Pa. C.S. A. §8849.1, all members of a member-managed limited liability company owe to all other members a duty of loyalty, good faith and fair dealing.

78. Plaintiff, as Executrix of the Estate of Deceased Dissociated Member, is owed fiduciary duties.

79. The Defendants breached these fiduciary duties by intentionally, willfully and maliciously withholding financial information and denying the Executrix access to records.

80. Defendants further breached their fiduciary duties by their improper retention of control of Decedent's majority interest, in refusing to initiate the intended buyout first officially presented by Defendants on April 3, 2025.

81. By their exercise of improper control, Defendants were further in breach of their fiduciary duties as this conduct was oppressive, effectively acting as majority interest holders and designed to coerce the Estate into accepting a lower, unilateral valuation

82. The aforementioned acts as set forth in this Complaint were done for individual self-interest and not for the interests of the LLC and all of its Members.

83. Defendants' actions were and are detrimental to the interests of the Estate, and constitute actionable breaches of fiduciary duty that is owed to the Estate as Dissociated Member and accordingly, to Plaintiff as Executrix of that Estate.

      WHEREFORE, Plaintiff respectfully requests this Honorable Court enter judgment in favor of Plaintiff and against Defendants, for breach of fiduciary duties, and

award Plaintiff all compensatory damages as set forth hereinabove, punitive damages for the oppressive and intentional conduct of Defendants, attorney's fees and costs due to this malicious conduct, and for and any other such relief as this Court deems just and equitable.

Respectfully submitted,

FREUNDLICH & LITTMAN, LLC

By: /s/ *Megan D. Hazel, Esquire*
    Megan D. Hazel, Esquire
    Attorney for Plaintiff, Jordan
    Nikoloff, as Executrix of the
    Estate of John A. Nikoloff

November 18, 2025

## VERIFICATION

I, Jordan E. Nikoloff, as Executrix of the Estate of John A. Nikoloff, hereby verify that the statements made in the foregoing Civil Complaint in Equity are true and correct to the best of my knowledge, information and belief. I am aware that false statements of fact made knowingly are subject to penalties of 18 Pa. C.S.A. §4904 relating to unsworn falsification to authorities

*Jordan Nikoloff*
_____
Jordan E. Nikoloff,
Executrix of the Estate of
John A. Nikoloff